IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:17-cr-00238 |
| | ) | JUDGE RICHARDSON |
| TAVARIE ALEXANDER WILLIAMS | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Tavarie William's Motion to Suppress Evidence and Incorporated Memorandum of Law (Doc. No. 34, "the Motion"), to which the Government has responded (Doc. No. 48). Via the Motion, Defendant raised seven separate issues.[1] The Court previously resolved five of those seven issues (Doc. Nos. 76 & 90), and only two remain: (1) whether the search warrant affidavit provided probable cause for the search of Room 264 ("Issue Six"); and (2) whether the DNA sample was obtained pursuant to a warrant that allegedly failed to provide an adequate justification for a buccal swab of Defendant ("Issue Seven").

**I. Probable Cause and the *Leon* Good-Faith Exception to the Exclusionary Rule**

"Probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019)

---

[1] Defendant seeks suppression of (1) all fruits of what he claims is the violation of his Fourth Amendment rights occasioned by the Government obtaining the real-time cell-site location information (CSLI) used to locate Defendant ("Issue One"); (2) all fruits of his resulting arrest just outside Room 264 at the motel, which he claims was made without probable cause and thus in violation of his Fourth Amendment rights ("Issue Two"); (3) all fruits of law enforcement officers' post-arrest, warrantless entry into Room 264,3 which he claims was made in violation of his Fourth Amendment rights ("Issue Three"); (4) all fruits of the warrantless search of Defendant's cell phone, which he claims was made in violation of his Fourth Amendment rights ("Issue Four"); (5) his statement to officers connecting him to the firearm officers later found in another room at the motel, which he claims was obtained without a valid waiver of his Miranda rights and thus in violation of his Fifth Amendment rights ("Issue Five"); (6) all fruits of the subsequent search of Room 264 pursuant to a search warrant, which allegedly was obtained using information obtained illegally as asserted by Defendant in contentions (1) through (5) above ("Issue Six"); and (7) the DNA sample obtained pursuant to a warrant that allegedly failed to provide an adequate justification for a buccal swab of Defendant ("Issue Seven"). (Doc. No. 34).

(en banc) (citing *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)). In its recent en banc decision in *Christian*, the Sixth Circuit instructed that probable cause should be determined "[v]iewing the 'totality of the circumstances,' *Florida v. Harris*, 568 U.S. 237, 244 [] (2013), through the 'lens of common sense,' as the Supreme Court has instructed, *id*. at 248[.]" *Id*. at 309. The court further explained:

> Time and again the Supreme Court has emphasized that [p]robable cause is not a high bar to clear. Where, as here, a magistrate has issued a search warrant based on probable cause, we do[ ] not write on a blank slate. Rather, the magistrate's probable-cause determination should be paid great deference, and we overturn that decision only if the magistrate arbitrarily exercised his or her authority. We are not permitted to attempt a *de novo* review of probable cause.

*Id*. at 311 (citations and quotation marks omitted). The "'haste of a criminal investigation' under which officers often draft an affidavit supporting a search warrant" is also relevant to a probable cause analysis. *Id*. at 310. Courts should keep in mind that "police officers are mostly non-lawyers who must draft search-warrant affidavits 'on the basis of nontechnical, common-sense judgments[.]'" *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 235-36 (1983)).

Even if a search warrant is determined not to have been supported by probable cause, such that the search was in violation of the Fourth Amendment, the fruits of the search are not necessarily suppressible. Pursuant to *United States v. Leon*, 468 U.S. 897, 905 (1984), "the introduction of evidence obtained in violation of the Fourth Amendment is permitted in criminal trials when the evidence is 'obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment.'" *United States v. Moorehead*, 912 F.3d 963, 968 (6th Cir. 2019) (quoting *Leon*, 468 U.S. at 909). A search warrant affidavit is insufficient for police to rely upon in good-faith if it is "bare bones." But if an affidavit is not bare-bones, it is one upon which an officer can rely in good-faith. *Christian*, 925 F.3d at 312.

"[T]o be considered bare bones, an affidavit must be 'so lacking in indicia of probable cause' as to make an officer's 'belief in its existence [] objectively unreasonable.'" *Id.* (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005))). An affidavit is barebones only if it "merely 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *Id.* (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004))). Further, "[t]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 313 (citation and internal quotation marks omitted).

**II. Issue Six: The Room 264 Search Warrant**

After arresting Defendant, law enforcement obtained a search warrant to search Defendant's hotel room (Room 264). (Doc. No. 34-2). Defendant asserts that the search conducted pursuant to this warrant violated Defendant's Fourth Amendment rights. (Doc. No. 34 at 6). The entirety of Defendant's argument is as follows:

> [The warrant affidavit] was based mainly on information obtained through illegal actions described [elsewhere in the Motion to Suppress]. That information must be redacted from the warrant affidavit. After that redaction, the warrant establishes only that [the alleged juvenile victim] ran away from home and texted her relatives recently. After that redaction, the requisite nexus between the suspicion and the place to be searched is utterly lacking. . . . Thus, the search warrant was plainly invalid, and the search of Room 264 was unconstitutional.

(*Id.*) (citations omitted).

Defendants argument is effectively moot. The Court has ruled that the alleged "illegal actions" described elsewhere in the Motion were lawful. (Doc. Nos. 76 & 90). This means that nothing should or will be redacted from the affidavit for purposes of assessing the adequacy of its

showing of probable cause. Thus, because Defendant does not challenge the adequacy of the warrant affidavit without the redactions he urges,[2] the Motion with respect to Issue Six is denied.

**II. Issue Seven: The Buccal-Swab Warrant**

The Franklin Police Department obtained a warrant to acquire "buccal swabs from [Defendant] for DNA comparison." (Doc. No. 34-4 at 1). "[U]sing a buccal swab on the inner tissues of a person's cheek in order to obtain DNA samples is a search" for Fourth Amendment purposes. *Maryland v King*, 569 U.S. 435, 446 (2013). Defendant argues that "the Fourth Amendment prohibits an investigator from taking a buccal swab from a defendant for DNA unless the investigator has identified evidence against which it would be useful to compare the defendant's DNA." (Doc. No. 34 at 7) (citing *United States v. Myers*, No. 14CR135 (ADM/LIB), 2014 WL 3384697, at *8 (D. Minn. July 10, 2014), and *United States v. Marshall*, No. 11CR381(A)(M), 2012 WL 2994020, at *2-3 (W.D.N.Y. July 20, 2012)). Thus, Defendant contends that the warrant affidavit is insufficient to support probable cause for a buccal-swab of Defendant because it "did not claim that any evidence was collected that was of the right type or of adequate quality to be used for comparison purposes with the DNA the police were seeking to obtain from [Defendant]." (Doc. No. 34 at 7-8).

The Government responds that the unpublished district court decisions upon which Defendant relies are not compelling authority, because they: (1) are factually distinguishable (as

---

[2]Alternatively, the Court holds that any challenge to the sufficiency of the warrant affidavit as a whole, without Defendant's purported redactions, would be rejected. "Probable cause is not a high bar to clear[.]" *Christian*, 925 F.3d at 311 ("An affidavit need only present some connection, regardless of how remote it may have been . . . between the illegal activity and the place to be searched." (citation omitted)). A review of the warrant affidavit reveals abundant factual allegations that give rise to the conclusion that "a probability or substantial chance of criminal activity" occurred in Room 264. *Id.* (citation omitted); (Doc. No. 34-2 at 7-8). Furthermore, even if the affidavit somehow were viewed as coming up short on probable cause, the good-faith exception to the exclusionary rule would apply here to defeat Defendant's motion with respect to this issue because the warrant affidavit is not the type of "bare bones" affidavit upon which it would be objectively unreasonable for an officer to rely and there are no allegations of police misconduct. *Id.* at 313; (Doc. No. 34-2 at 7-8).

they involve DNA recovered from firearms, whereas here the DNA potentially to be compared would be from a rape kit); and (2) do not line up with existing Supreme Court case law. (Doc. No. 48 at 24) (citing *King*, 569 U.S. 435, 446 (2013)). In *King*, the Supreme Court held that law enforcement officers have the right to swab arrestees without a warrant as part of the routine booking process, relying in part on an arrestee's decreased expectations of privacy from police scrutiny and on the "minimal intrusion" imposed by a buccal swab. 569 U.S. at 462-63. In conducting its Fourth Amendment analysis, the primary governmental interest relied on by the Court was the "need for law enforcement officers in a safe and accurate way to process and identify the persons and possessions they must take into custody." *Id*. at 463. The Court concluded that the governmental interests outweighed the slight bodily intrusion occasioned by the swabbing. *See id*. at 463-64; *see also United States v. Proctor*, 230 F. Supp. 3d 1, 2 (D.D.C. 2017) (analyzing *King* and explaining that "[t]he governmental interest in seeking a saliva sample by buccal swab is even "stronger" when the . . . the government seeks to link the defendant to seized [evidence]." (quoting *United States v. Haight*, No. 15–88, 2015 WL 7985008, at *1 (D.D.C. 2015))).

The Court doubts that a warrant affidavit to obtain a buccal swab must allege the existence of a comparison sample that is "of the right type or [] adequate quality to be used for comparison purposes", as Defendant contends, especially in light of *King*. (Doc. No. 34 at 7-8); *see also United States v. Wilhere*, 89 F. Supp. 3d 915, 919 (E.D. Ky. 2015) (finding "probable cause" for "DNA buccal swab" because "Defendant is suspected of murder and . . . there *might* be DNA on the victim's body that could be compared to Defendant's DNA" (emphasis added)); *United States v. Cesario*, No. 14-CR-92 PJS, 2014 WL 3577436, at *10 (D. Minn. July 18, 2014) (concluding "buccal swab warrant was supported by probable cause because there was a fair probability that the DNA evidence sought would yield evidence of a crime," since defendant's DNA sample was

5

"necessary to compare with 'any DNA that *may*' be recovered from" handgun (emphasis added)). Additionally, assuming arguendo that the affidavit must have alleged the collection of some type of comparison sample, Defendant does not explain why the collection of evidence (of investigative value still to be determined) via a rape kit in an ongoing investigation is not sufficient. Nevertheless, the Court need not decide, because even if the Court were to adopt Defendant's suggested interpretation of Fourth Amendment law as it pertains to warrants to obtain buccal swabs, the good-faith exception to the exclusionary rule defeats Defendant's motion. *See Leon*, 468 U.S. at 905.

In this case, "it is impossible to deny that [the warrant affidavit] contains factual allegations, not just suspicions or conclusions." *Christian*, 925 F.3d at 312. For example, the warrant affidavit states, as highlighted by the Government in its response, the following factual allegations:

> (1) the juvenile victim was rescued from a hotel room where she was alone with the defendant; (2) the juvenile victim indicated that prior to the officers' arrival, the defendant had been nude and in the bed with her, and she was performing oral sex on him; (3) the juvenile victim indicated that she and the defendant had been having sexual intercourse on a daily basis since July 20, 2016; (4) the juvenile victim was transported to a hospital where an examination was performed and evidence was collected for a rape kit.

(Doc. No. 48 at 22 (citing Doc. No. 34-4 at 1-2)). Thus, this is not the type of "bare bones" affidavit upon which it would be objectively unreasonable for an officer to rely.[3] *See Christian*, 925 F.3d at 313. Nor would an officer be objectively unreasonable for failing to appreciate Defendant's view of the Fourth Amendment's requirement, even if that view ultimately is vindicated. *See United*

---

[3] Although prevalent, the term "good-faith" as used in this context appears actually to be a misnomer. The "good faith" exception does not turn on the officers' "good-faith"—a subjective concept—but on whether their actions were objectively reasonable. *See United States v. Savoca*, 761 F.2d 292, 294 n.1, 295 (6th Cir. 1985). The Court does wonder, however, whether this principle has been qualified somewhat by *Christian*, which relied in part on the "utter lack of police wrongdoing," 925 F.3d at 313, a term which arguably could understood to include a lack of *subjective* bad faith on the part of the police.

6

*States v. Lopez-Castillo*, No. 15-CR-279 (JNE/TNL), 2016 WL 1611582, at *2 (D. Minn. Apr. 22, 2016) (holding that the good-faith exception applied because "[i]t would be entirely reasonable for an officer to believe that the Fourth Amendment did not rigidly require laboratory tests confirming the presence of testable DNA before a buccal swab could be obtained for comparison."). Indeed, as noted above, the correctness of Defendant's view is anything but clear to this observer who, like the typical judge but unlike the typical officer, is familiar with the intricacies of Fourth Amendment law.

Further, the "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates" *Christian*, 925 F.3d at 313 (citing *Leon*, 468 U.S. at 916). Therefore, like in *Christian*, "[t]his is a particularly egregious case to misapply the good-faith exception given the utter lack of police wrongdoing." *Id*. Accordingly, the Court finds that the good-faith exception applies.

## CONCLUSION

For the above-mentioned reasons, Defendant's Motion to Suppress Evidence with respect to Issue Six and Issue Seven (Doc. No. 34) is **DENIED**. All seven issues presented in Defendant's Motion have now been resolved. (*See* Doc. Nos. 76 & 90).

IT IS SO ORDERED.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE